IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STEVE SCRUGGS, ) <br> ) <br> Plaintiff, ) <br> ) <br> -against- ) <br> ) <br> ) <br> MICHELIN NORTH AMERICA, INC. ) <br> ) <br> Defendant. ) <br> ) | **COMPLAINT** <br> **(JURY TRIAL DEMANDED)** <br><br><br> CASE NO.: |

Plaintiff, Steve Scruggs (herein "Plaintiff" or "Mr. Scruggs"), by and through his attorneys, the Law Office of Christine A. Rodriguez, files this Complaint for damages and other relief, against Defendant, Michelin North America, Inc. (herein "Defendant" or "Michelin") and alleges as follows:

## NATURE OF CASE

1. Plaintiff brings this action against the Defendant for damages Plaintiff sustained as a result of the Defendant's unlawful discrimination and retaliation against Plaintiff due to his age in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621 ("ADEA"), the North Carolina Equal Employment Practices Act NC 6. S. 143-422.2, et seq., North Carolina Public Policy and all other applicable federal, state and local statutes. Plaintiff was discriminated against on the basis of his age and was terminated from his employment in retaliation for his complaints of discrimination.

1

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff is a fifty-six (56) year old man who resides in Asheboro, North Carolina and he is a United States citizen.

3. Plaintiff was employed by Defendant for over thirteen (13) years from 2006 to January 21, 2020.

4. From September 2017 until the Defendant terminated his employment on January 21, 2020, the Plaintiff worked at the Oliver Rubber Plant ("the Plant"), a wholly owned subsidiary of the Defendant, in Asheboro, North Carolina.

5. Upon information and belief, Defendant is a corporation formed under laws of the State of South Carolina with its principal place of business in Greenville, South Carolina.

6. During all times relevant to the claims in this action, the Defendant was Plaintiff's employer within the meaning of all applicable statutes.

7. During all times relevant to the claims in this action, Michelin employed more than five hundred (500) people throughout the United States, including North Carolina, and abroad.

8. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-(f)(3), because they arise under the laws of the United States and are brought to recover damages for deprivation of equal rights.

9. This Court has supplemental jurisdiction over the claims under the North Carolina's Tort Claims Act pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)-(c) and 42 U.S.C. § 2000e-5(f)(3), because the acts and omissions giving rise to the claims alleged herein occurred in this District.

2

11. The Western District of North Carolina has personal jurisdiction over the Defendant because it does business in North Carolina and because the acts complained of and giving rise to the claims alleged herein occurred in North Carolina and in this District.

12. Plaintiff has exhausted his administrative remedies and complied with all statutory prerequisites to his ADEA claims.

13. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 9, 2020.

14. The EEOC issued a Notice of Right to Sue dated April 30, 2021.

15. Plaintiff commenced this action within 90 days of receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

16. Plaintiff is male, Caucasian and currently fifty-five (56 ) years old.

17. Prior to becoming the Plant Manager at Defendant's Oliver Rubber Plant in Asheboro, North Carolina, Plaintiff worked in three (3) other facilities owned and operated by the Defendant before being promoted to Plant Manager at the Asheboro location.

18. In March 2017, Plaintiff received an offer for the position of Plant Manager of the Oliver Rubber Plant in Asheboro.

19. The offer required Plaintiff to move from his home in Lexington, South Carolina, where he and his family had lived for some time and established community roots, to Asheboro, North Carolina.

20. Plaintiff was highly qualified for the position and was employed with Defendant for over ten (10) years prior to his promotion and move to North Carolina.

21. Up until Plaintiff became the Plant Manager in Asheboro, he never had a complaint levied against him at any of Defendant's locations.

22. Mr. John Revell ("Revell") served as the Plant Manager of Oliver Rubber for twenty-three (23) years prior to Mr. Scruggs' promotion.

23. Revell was an older man who had not yet set a retirement date until Plaintiff's arrival at the Plant.

24. Under Revell, one of the employees he supervised at the Plant, Todd Godwin ("Godwin"), who is at least ten (10) years younger than the Plaintiff, was allowed and enabled to assert an unusual amount of authority over plant operations well exceeding his role as Tech Responsible for Activity (RTA) at the Plant.

25. The RTA is one of ten (10) positions that report directly to the Plant Manager.

26. Once Scruggs started his new job at the Plant, it became readily apparent that the Plant was not in compliance with various security, safety, and human resource policies based on well-established standards and policies at Michelin with which he was very familiar.

27. As a result of the Plant's lack of compliance, Scruggs began working with his designated leadership team, which at the time included Godwin, to reinforce Defendant's policies and make sure the Plant operated efficiently and successfully.

28. Despite Plaintiff's efforts to engage the staff in these initiatives, a few of the younger employees failed to embrace his leadership and did not adjust well to changes he implemented.

29. Several of the younger employees under Plaintiff's supervision, led by Godwin, made false and unwarranted claims against Plaintiff's management style and character.

4

30. When the Plaintiff complained about this group of disgruntled employees' tactic of using the company ethics reporting procedures to harass him, the Defendant failed to address his concerns going against the Defendant's own policy.

31. Instead, the Defendant ultimately credited the claims in these complaints, despite abundant information and evidence to establish that they were unfounded, siding with an insubordinate group of disgruntled younger employees and the Defendant terminated Plaintiff's employment to bring in another younger manager for the Plant.

32. Defendant engaged in disparate discriminatory conduct by failing to address Plaintiff's concerns, acting contrary to their own well established company policy and retaliating against the Plaintiff with an adverse employment action.

33. For example, on a September 17, 2019, someone made a complaint to the Michelin "BeeLine," the company's ethics hotline.

34. The substance of and information provided in the September 2019 complaint was based in large part on the caller's displeasure with certain management changes, which were consistent with complaints made by Godwin as he tried to rally other employees to turn against Plaintiff and thwart his authority as the new Plant Manager.

35. Notably, a week after the September 2019 complaint was submitted to the "BeeLine," Godwin resigned from his position.

36. In response, to the September 2019 complaint, the Defendant dispatched their Human Resources Director, Jack Ashton ("Ashton") to the Plant to investigate.

37. The Plaintiff welcomed Ashton and did everything in his power to cooperate and provide any necessary information on the concerns raised.

5

38. Ashton expanded the investigation to include not only the individuals who were identified in the complaint, but also all of all of Plaintiff's direct reports, although there had not been any other complaints.

39. Ashton reported the results of his investigation to Vincent Peter ("Peter"), Michelin's Director of Manufacturing at the time.

40. Peter was the Plaintiff's direct supervisor.

41. Peter spoke with Scruggs after the investigation was complete and advised him that though he believed there was nothing to the complaint, and that he did not intend to do impose any discipline on Scruggs for it, the interviews revealed some issues with "team dynamics" at the Plant that needed improvement.

42. The Plaintiff, who had already begun work to improve team dynamics at the Plant after recognizing need for improvement once he took over the position, agreed with Peter.

43. Peter approved a team dynamic improvement plan, some aspects of which Plaintiff had already begun implementing on his own before the complaint.

44. Peter also suggested that Plaintiff seek a "coach" to help him better navigate and improve upon the "team dynamics, and Plaintiff made arrangements with a management peer for coaching.

45. Two weeks prior to Ashton's investigation into the September 2019 complaint, Plaintiff conducted "Purpose" and "Five Dysfunctions" management training with the entire staff.

46. The feedback from Peter provided Plaintiff an opportunity to implement more team centered programming, including frequent 1-on-1 meetings with each of his direct reports and four group staff trainings devoted to improving team dynamics.

6

47. Additionally, Scruggs to more time to focus on appreciating and recognizing sensitive situations faced by his employees and sought feedback from others on how to improve his communication style.

48. After making these adjustments, many of the staff shared with Plaintiff their appreciation for his active participation in the process of bettering "team dynamics."

49. Upon information and belief, the September 2019 complaint and investigation was closed without any further action by the Defendants.

50. While many appreciated Plaintiff's efforts to reinvigorate "team dynamics," two of his direct reports did not adjust well to the adjustments being made.

51. These two employees were cohorts and friends of Godwin and they had interacted regularly with Godwin at work and outside of work before he resigned.

52. The two employees, Fran New ("New") and Melany Garcia ("Garcia"), were both female and, upon information and belief, considerably younger than Plaintiff, based, in part, on both describing themselves as "millennials" in Plaintiff's presence.

53. On December 11, 2019, another anonymous complaint against the Plaintiff was called into the "BeeLine."

54. This December 2019 "BeeLine" complaint named both New and Garcia as subjects of the conduct alleged in the complaint.

55. These complaints were levied a short time after Plaintiff discovered and reprimanded Ms. New for serious errors on the budget/forecast plan for the Plant, and after Mr. Scruggs reprimanded Ms. Garcia for attendance and performance related issues, consistent with Plaintiff's duties as the Plant Manager.

56. Despite the context, Mr. Scruggs took these complaints seriously, and asked the Plant's Human Resource Manager, Davis Jackson ("Jackson"), to sit in on his meetings with the two employees going forward.

57. Jackson agreed with Scruggs' request, and began to sit in on Plaintiff's meetings with Ms. New and Ms. Garcia.

58. After each meeting, Scruggs sought feedback from Jackson on whether he had conducted himself appropriately and Jackson assured him after each one that he had conducted the meeting appropriately.

59. However, on December 18, 2019, Jackson was unavailable to sit in on a meeting that the Plaintiff had scheduled with New.

60. The meeting was the final one planned for the year with New before the Plant shut down for the holiday season.

61. Plaintiff conducted the meeting with New and she did not express any concerns to him during, or after the meeting.

62. Plaintiff sent New a follow up email after the meeting to memorialize what they discussed.

63. New went to Jackson to complain about her interaction with Plaintiff shortly after that meeting, coincidentally the only one Jackson could not attend, but she declined an opportunity to file a formal complaint at that time.

64. On December 20, 2019, Plaintiff interacted with New once again before the Plant closed, shook her hand and thanked her for her service, before wishing her a Merry Christmas and safe travels.

65. Approximately thirty (30) minutes after the December 20th interaction, New sent Scruggs an email accusing him of making her uncomfortable during the meeting.

66. In stark contrast, New had written an "Admiration" note to Scruggs just two (2) days before in during team building meeting.

67. That "Admiration" note stated that New "admired [Scruggs'] dedication to making sure decisions taken by the Plant minimize the negative consequences to the employees" and that she thought he "managed [the Plant] well."

68. In January 2020, Ashton directed Jackson to follow up with New about her previous complaint after her last scheduled meeting with Scruggs.

69. Once Jackson followed up with New, she filed a formal complaint against the Plaintiff.

70. It was well known at the Plant that Godwin, Garcia and New were friends, and that Godwin and Garcia often socialized outside of work.

71. When Godwin's resignation was announced at a staff meeting, New and Garcia were noticeably upset by the news.

72. Shortly after Godwin resigned, the Plaintiff received feedback from several staff members that Godwin attempted to recruit them to oppose Plaintiff's management ideas, initiatives and leadership in support of Godwin.

73. As early as October 2019, and several other times through January 2020, Plaintiff informed and complained to his supervisors about this and explained that he believed the "BeeLine" complaints (which Peter initially deemed unfounded) were a deliberate untruthful attack on his character and job meant to harass him and possibly damage his employment at Michelin.

74. Plaintiff made several complaints and provided information to Defendant's Talent Manager Carrie Bernard, Ashton, Peter, and Jackson.

75. Despite Plaintiff's multiple harassment complaints, contrary to the Defendant's personnel and human resources policy, the Defendant failed to fully investigate, or even acknowledge Plaintiff's complaints.

76. Instead, the Defendant discriminated and retaliated against Scruggs by terminating him from his position as Plant Manager of Oliver Rubber on January 21, 2020.

77. The Defendant failed to follow its own progressive discipline policy to address any of the alleged complaints against the Plaintiff, a policy that Plaintiff had observed the Defendant routinely follow with other Plant managers in the past regularly and under circumstances where there were much more serious allegations against a manager.

78. Part of Michelin's progressive discipline policy is to place a manager at Plaintiff's level on a Performance Improvement Plan (PIP) to address concerns before simply terminating their employment, but that did not happen to the Plaintiff.

79. Instead, the Plaintiff was led to believe that the Defendant, based on Plaintiff's conversations with his direct supervisor, Peter, thought that the complaints were mostly unfounded.

80. Additionally, the Defendant denied Plaintiff the opportunity to appeal the decision to terminate his employment pursuant to the Defendant's Guarantee of Fair Treatment ("GFT") policy whereby an employee facing termination can appeal through the GFT process to ensure that they have not been unfairly terminated.

81. On the day that the Defendant fired the Plaintiff in January 2020, upon information and belief, Mr. Jackson informed the local police in Asheboro.

82. When Scruggs returned to the Plant to collect his belongings after attending a meeting in Greenville, South Carolina with Peter, during which Peter fired Plaintiff, the Plaintiff observed two police patrol cars outside of the Plant.

83. Asheboro, North Carolina, where the Plant is located, is a small community where Plaintiff still lives with his family.

84. On his way back to the Plant on the day he was fired, Plaintiff began receiving messages from people at the Asheboro plant.

85. It had apparently already been announced that Plaintiff had been fired.

86. One of the messages Plaintiff received was from the father of Plaintiff's son's friend (an employee who reported to Ms. New).

87. This posed a substantial risk that Plaintiff's children would find out that their father had been fired from a third party before he could tell them himself, as well as the risk that untrue and speculative information would be spread throughout the Plant, and the community causing irreparable damage to Plaintiff's reputation.

88. The presence of two patrol cars stationed at the entrance of the Plant when Plaintiff returned from the meeting with Peter further increased this risk unnecessarily.

89. Plaintiff had only witnessed a police presence requested at a Michelin plant once before, when there was a credible threat of violence from an employee in the past.

90. There was no reason whatsoever for Michelin to notify the police and request their presence at the Plant on the day that Plaintiff was fired, and their choice to do so created the inaccurate impression that Plaintiff posed a threat to the Plant and the employees at the Plant.

11

91.     Plaintiff, however, had never had a negative report or evaluation during his tenure with Michelin and was well respected at the company and by many of the employees who reported to him.

92.     In the months after they fired him, the Defendant was slow and negligent in processing Plaintiff's post termination paperwork.

93.     This caused undue delays in Plaintiff obtaining COBRA continuation health insurance coverage and obtaining access to restricted stocks which were vested and which Plaintiff was entitled to move into his personal accounts and redeem.

94.     The difficulty he experienced obtaining these benefits, to which Plaintiff was legally entitled, nearly cost him the opportunity to continue his health insurance coverage and obtain those stocks.

95.     After the Defendant fired Scruggs in March 2020 the Defendant moved Nermin Hairlahovic from another Michelin facility to replace Scruggs as Plant Manager of Oliver Rubber.

96.     Upon information and belief, based on information Plaintiff observed on Mr. Hairlovic's LinkedIn social media profile Mr. Hairlahovic is younger (in his forties) and less experienced than Plaintiff.

**FIRST CAUSE OF ACTION**

**Age Discrimination and Retaliation in violation of ADEA**

97.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 96 as if fully set forth herein.

98.     By the acts and practices described above, Defendant discriminated against Plaintiff, who was fifty six (56) years old at the time of the acts complained of herein, in the terms

12

and conditions of his employment because of his age in violation of the ADEA.

99. Plaintiff accepted the position of Plant Manager at Defendant's Asheboro location in September 2017.

100. Plaintiff was well qualified for the position of Plant Manager.

101. Plaintiff adequately and satisfactorily performed the essential functions of his job as Plant Manager.

102. Plaintiff complained about disparate treatment to his supervisors and human resources, but nothing was done about his complaints.

103. The Defendant failed to conduct an investigation into Plaintiff's complaints which was not consistent with the Defendant's well-established policies and procedures.

104. In contrast, the Defendant investigated the claims of several younger, disgruntled employees (Godwin, New and Garcia) against Plaintiff, even after Plaintiff's direct supervisor suggested to Plaintiff that these claims were unfounded.

105. Defendant took an adverse discriminatory and retaliatory employment action against Plaintiff by terminating his employment in January 2021.

106. The Defendant then hired a younger, less experienced person to replace Plaintiff as the Plant manager after they fired Plaintiff.

107. The Defendant also took action that likely damaged Plaintiff's reputation in the community, by advising employees at the Plant that he had been fired and requesting local police presence at the Plant on the day Defendant fired Plaintiff.

108. Additionally, in retaliation for Plaintiff's complaints, Defendant failed to timely process Plaintiff's post termination paperwork necessary for Plaintiff to obtain benefits to which he was legally entitled after he was fired.

109. Defendant's delay caused financial harm and hardship to Plaintiff.

110. Plaintiff is now suffering and will continue to suffer irreparable injury, monetary damages, and damages for mental anguish and humiliation as a result of Defendant's discriminatory and retaliatory acts.

## SECOND CAUSE OF ACTION
### Age Discrimination and Retaliation
### In Violation of North Carolina State Law and
### Against North Carolina Public Policy

111. Plaintiff repeats, reiterates and realleges paragraphs 1 to 110 of this Complaint as if fully set forth herein.

112. By the acts and practices described above, Defendant discriminated and retaliated against Plaintiff in the terms and conditions of his employment and by acting adversely against Plaintiff because of his age, as described above, against public policy as defined in and in violation of the North Carolina Equal Employment Practices Act, NC 6.S. 143-422.2, et seq.

113. Plaintiff is now suffering and will continue to suffer irreparable injury, monetary damages and damages for mental anguish and humiliation because of Defendant's discriminatory and retaliatory acts.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an award:

(a) directing Defendant to pay Plaintiff compensatory damages, in an amount that exceeds the jurisdictional minimum of this court, including, but not limited to back pay, front pay and benefits;

(b) directing Defendant to pay Plaintiff punitive damages;

(c) directing Defendant to pay an additional amount to compensate Plaintiff for the emotional distress and reputational damage Defendant's unlawful conduct has caused Plaintiff, an amount that exceeds the jurisdictional minimum of this court;

(d) awarding Plaintiff such interest as is allowed by law;

(e) awarding Plaintiff his reasonable attorneys' fees and costs; and

(f) granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Dated: July 15, 2021
Charlotte, North Carolina

Respectfully submitted,
LAW OFFICE OF
CHRISTINE A. RODRIGUEZ

_____
Christine A. Rodriguez (NC Bar No. 54143)
15720 Brixham Hill Avenue, Suite 310
Charlotte, North Carolina 28277
Telephone: (704) 981-1767
Facsimile: (888) 349-2932
*Attorneys for Plaintiff*